### GEORGE W. FARRIER *vs.* STATE AGRICULTURAL SOCIETY.

#### April 7, 1887.

Entry for Race at Agricultural Fair—Postponement of Race—Recovery of Entry Fee.—Under Laws 1885, *c.* 174, § 2, the State Agricultural Society is required to hold an annual state fair upon the grounds owned by the state, at such times and for such period as the society may prescribe. Where, in pursuance of this provision, the society have fixed the dates within which such fair shall be held, and advertised the same, exhibitors making entries of stock and wares in pursuance of such determination are not bound to keep the same upon exhibition without their consent for a longer period, though the executive officers of the society assume to extend the time and continue the fair later than the dates originally fixed. But where persons have made entries for the exhibition of the speed of horses, subject to a rule specially applicable thereto, which allows such exhibitions, at the option of the society, to be continued in case of storms to the next fair day, and, if necessary, beyond the time fixed for the regular fair, it is held by the majority of the court that such persons are bound by such rule as a part of the contract under which their entries are made, and that the executive officers may postpone such contests in conformity with such rule, and such postponement constitutes no ground for the recovery of fees advanced when the entries are made.

Appeal by defendant from a judgment of the municipal court of Minneapolis.

*W. S. Pattee* and *C. M. Ferguson,* for appellant.

*Ankeny & Merrill,* for respondent.

VANDERBURGH, J. The trial court allowed plaintiff, upon his claim against the defendant, the sum of $335. Of this amount $215 had been previously deposited by plaintiff with defendant to satisfy a contingent claim, which defendant agreed to return if such claim proved unfounded, and which defendant admits the plaintiff is entitled to, subject to a counterclaim. The balance, $120, had been paid to defendant as a part of the amount of the entrance fees, (amounting in all to $410,) charged as a condition of allowing certain horses owned by plaintiff to compete in different contests of speed, advertised by defendant to take place at the state fair for the year 1885, in which races, however, the plaintiff's horses failed to take part, because, as he insists, the races did not take place as advertised by the defendant. The latter, however, claims to be entitled to retain the amounts deposited, and to a judgment for a balance of $75, counterclaim for entrance fees.

The State Agricultural Society, defendant, is required by law (Laws 1885, c. 174, § 2) to hold an annual state fair upon the grounds owned by the state, at such times *and for such period as the society may prescribe;* and it is authorized and empowered to make all needful rules and regulations for the government of such expositions, in providing therefor, "and in providing for and paying such premiums at such expositions as they shall see fit." It is found in this case that the society made provision for the annual fair of 1885, and prescribed the seventh, eighth, ninth, tenth, eleventh, and twelfth days of September of that year as the period within which such fair would be held, and extensively advertised the same, and also advertised that at said fair exhibitions of speed in horse-racing would be given, at which fast horses would be allowed to compete for prizes offered, and that the trotting and pacing at such exhibitions would be conducted under the rules laid down by the National Trotting Association, of which association the defendant was a member; that among the rules of the National Trotting Association is the following: "In case of unfavorable weather, each association or proprietor shall have power to postpone to the next fair day and good track (omitting Sunday) all purses or sweepstakes, or any race to which they have contributed money, upon giving notice thereof." And among the rules

and regulations prescribed by the defendant for the management of such contests is the following, (rule 6:) "If, owing to rain or any other unfavorable circumstances, the race should not be finished by Saturday night, the society reserves the right to declare the races off, and to return the entrance money to those making the entry." In this case it is also found that, upon the days fixed for the races for which the plaintiff made the entries alleged, the track was not in a suitable condition to be used, on account of rain, and that, in consequence thereof, the president of the defendant association, with the consent of the directors, did postpone and continue the fair and races to the fourteenth and fifteenth days of September. The defendant notified plaintiff of such postponement, which was in conformity with the rules of the trotting association referred to, and the plaintiff declined to take part in the races so postponed, and demanded a return of the entrance money paid by him, ($120,) which defendant refused to return.

The principal question is whether the executive officers of the society, in the management of the fair and during its progress, could, by virtue of the rules referred to, bind parties making entries by their action in so extending the time beyond that prescribed and advertised by the society. Its own rules do not, so far as appears, contemplate any such extension, and we are agreed that exhibitors generally, who are not subject to the rules of the trotting association, would not, therefore, be bound to retain their stock or wares regularly entered for exhibition at the fair for a longer period than that so prescribed. And the writer, with whom Justice Mitchell concurs, is of the opinion that the same rule should be held to apply to entries made for the trial of speed of horses at the fair. When the fair is ended as fixed and advertised by the society, its officers have no authority to extend any particular department of the exhibition for a longer period. The postponed races, then, are not, in our opinion, legitimately any part of the fair. It is true that the particular rule of the trotting association referred to, which is one of many applying to their ordinary meetings, provides for such postponement; but these rules must be held subordinate to the plan and purpose of defendant's organization, and must be limited in their application by the extent of its power

and authority in the premises.    The society is protected by its own rule 6, above referred to, and was not bound to extend the time for the races beyond the fair week, and the rules of the trotting association were, of course, qualified thereby.    These exhibitions for which entries were made as a part of the fair, in our opinion, ended when the fair ended, and the races must be deemed abandoned at that time, whether so formally declared or not.

But the majority of the court are of the opinion that the plaintiff was bound by the rules of the trotting association, as a part of the contract under which his entries were made, and that it was at the discretion of the society to exercise the power conferred thereby, in respect to the postponement of such contests.    In this instance, the defendant did not act under rule 6, but elected to act under the particular rule of the trotting association in question, of which the plaintiff was bound to take notice, and to the application of which he is presumed to have consented.    The majority of the court are therefore of the opinion that these particular exhibitions might be so postponed under the operation of this rule, and that the postponement as made came within the range of the executive duties of the officers, without the necessity of any formal action by the society in the premises.

Judgment reversed.